UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA

        against -

ZENAIDA CODRINGTON,

                          Defendant-Appellant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
**08-mc-0291 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pursuant to a violation notice dated February 16, 2006, Defendant Zenaida Codrington ("Defendant" or "Codrington") was charged with attempted theft of two perfume bottles worth approximately $53.75.[1] This petty offense took place at the Post Exchange Store ("PX") at the Fort Hamilton Army base, and thus fell under federal jurisdiction pursuant to 18 U.S.C. § 13(a) (incorporating criminal laws and punishments of state in which federal enclave is located). See Lewis v. United States, 523 U.S. 155, 160 (1998) ("basic purpose [of the statute] is one of borrowing state law to fill gaps in the federal criminal law that applies on federal enclaves"). Codrington was tried in a bench trial before Magistrate Judge Cheryl L. Pollak, was found guilty of attempted petit larceny (a class B misdemeanor under New York law), and was sentenced to a fine of $30 with a special assessment of $10. She appeals her conviction. For the reasons that follow, the court affirms.

---

[1] Federal Rule of Criminal Procedure 58(b)(1) allows a petty offense to proceed to trial on a "a citation or violation notice." Such offenses can be tried before a magistrate judge, 18 U.S.C. § 3401, and appealed to a district judge, 18 U.S.C. § 3402.

1

I.  BACKGROUND[2]

The issues on appeal relate to the use at trial of portions of a surveillance video tape of Codrington's conduct on the day in question. On that day, Carlos Sosa, a PX store detective, observed Codrington near the perfume aisle with two bottles of perfume in her hand. (A176-77; A112.)[3] Because Codrington was an employee who worked in the military clothing area, Detective Sosa was suspicious of her presence in another section of the store; accordingly, he went to the surveillance room to observe Codrington via the surveillance system. (A176-77.) According to Sosa, it appeared from the video that Codrington was holding items in her hand as she walked back through the store. (A173-75; A113-15.) Sosa stated that the video showed Codrington putting the items into a pile of military clothing and walking back to the manager's office where her bag was. (A175.) She was later stopped leaving the store with two bottles of perfume in her bag.

Precisely how the footage used in the courtroom came to be made is not fully clear from the record. Nor is it clear what happened to the original surveillance tapes. What is significant for present purposes, however, is that some of the footage from the original surveillance tapes was lost, and the defense claims this footage was potentially exculpatory. Moreover, although it is not fully clear what was lost and what was retained in the copies relied upon by Judge Pollak (see, e.g., A98-A101), it is agreed that ten to fifteen seconds from the beginning of the video sequence came to be missing from that final video (see A104-05).[4] The defense claims that this footage might have shown Codrington walking through the store from the perfume area to the

---

[2] For a more complete description of the facts and procedural background, see Judge Pollak's Memorandum & Order, United States v. Codrington, No. 07-mj-118(CLP), 2008 WL 1927372 (E.D.N.Y. May 1, 2008).

[3] Citations are to the appendix numbers at the bottom of each page of Appendix for Defendant-Appellant.

[4] Also missing was footage at the end of the tape, but the parties agreed before Judge Pollak that it was the first thirty minutes that was relevant to the charges. (A109-10.)

2

clothing area without holding any perfume, thus showing that she did not take the perfume that day.

Although this ten to fifteen seconds of tape was missing, Judge Pollak allowed Sosa to testify to what he had previously seen on that portion of the video based on his recollection of viewing it. (A107-08.) Judge Pollak also allowed the Government to play the video while Sosa testified about what it showed. (A112.) On appeal, Codrington argues that Judge Pollak violated her rights under the Due Process and Confrontation Clauses by (1) allowing the Government to introduce the incomplete video tape after losing or destroying a potentially exculpatory portion of it, and by (2) allowing Sosa to testify about his recollection of what the missing portion of the tape showed. (See Def. Mem. 22-32, 32-39.)

The court's review of these contentions is limited. At this stage of the proceedings, Codrington "is not entitled to a trial de novo by a district judge[; instead, t]he scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. Proc. 58(g)(2)(D). Thus, findings of fact are reviewed for clear error and legal questions de novo. United States v. Stewart, 551 F.3d 187, 190 (2d Cir. 2009). Evidentiary rulings are reviewed for abuse of discretion. United States v. Kelley, 551 F.3d 171, 174 (2d Cir. 2009).

## II. DISCUSSION

### A. Standard for Destroyed Evidence

Codrington argues that Judge Pollak erred by requiring that, in order to exclude the tapes, their destruction must have been deliberate. The defense argues that, instead, Judge Pollak should have balanced the degree of the Government's culpability against the amount of prejudice to Codrington. For its position, the defense relies heavily on United States v. Yevakpor, 419 F.

3

Supp. 2d 242, 252 (N.D.N.Y. 2006), in which the trial court excluded three selective segments of border-crossing video footage (showing a search) that were offered without the rest of the video. The court concluded that "[e]xclusion is an appropriate sanction given the government agency's deliberate destruction of evidence, in light of its knowledge that the evidence could have been used in prosecution or defense." Id.

Unlike Yevakpor, however, Judge Pollak found that there was not deliberate destruction here. In his testimony, Detective Sosa stated that he had inadvertently lost footage at the beginning of the original tapes in the process of combining them onto one tape. (A93.) Moreover, he stated that he had inadvertently left the tape in the VCR and half the video was recorded over. (A95.) This version of the tape—with two portions of missing footage—was used in court. After hearing from Detective Sosa, Judge Pollak credited his testimony (see A395) and her decision to do so was not clearly erroneous or contrary to law.

In response to the defense position, the Government argues that the deliberate destruction standard is appropriate and that, because none of the destruction was deliberate, there can be no due process violation nor sanctions against the Government. This standard is supported by the Supreme Court's decision in Arizona v. Youngblood, 488 U.S. 51 (1988), requiring bad faith on the part of the government for finding a Due Process violation for potentially exculpatory destroyed evidence. See United States v. Tyree, 279 Fed. Appx. 31, 33 (2d Cir. 2008) (setting out requirements for destruction of evidence claim, including "bad faith" requirement). Except for Yekavpor, in which there was deliberate destruction, the cases cited by Codrington in support of a standard lower than deliberateness were decided before Youngblood. Accordingly, the court rejects Codrington's contention that Judge Pollak erred in applying a deliberateness standard in this case.

4

B. <u>Admission of Video Surveillance Evidence</u>

This is not just a "destroyed evidence" case, however. Also at issue is whether Judge Pollak should have admitted an incomplete video when a missing part of that video resulted from destruction and/or loss that might have been negligent. Codrington has argued under the best evidence and completeness rules. The best evidence rule has the same "bad faith" requirement (when originals are lost or destroyed) as does <u>Youngblood</u>. <u>See</u> Fed. R. Evid. 1004. Her argument in this regard, therefore, must also be rejected. The completeness rule considers whether an excluded portion of admitted evidence is needed "to explain the admitted portion, to place it into context, to ensure a fair and impartial understanding of the admitted portion, or to correct a misleading impression that might arise from excluding it." <u>United States v. Rivera</u>, 61 F.3d 131, 135-36 (2d Cir. 1995).

Judge Pollak's decision to admit the video evidence is subject to abuse of discretion as an evidentiary ruling; the court sees no basis to conclude that it was such an abuse. Judge Pollak gave the defense the opportunity to cross-examine Sosa regarding his recollection of what happened and what he saw. Moreover, the evidence was not needed to correct a misleading impression. The impression given is clear—that Codrington was holding two items that she later hid in clothing and took to the back room. Even if the earlier footage had shown that Codrington was not holding perfume bottles (but was holding something else), this does not mean that the existing footage was itself misleading.[5]

---

[5] In this regard, a somewhat analogous case is <u>United States v. Sherman</u>, 293 Fed. Appx. 158, 159 (3d Cir. 2008), in which an early portion of video surveillance footage of a store robbery was not preserved for trial. The Third Circuit rejected the argument that, under the completeness rule, earlier video footage of a defendant entering the store was necessary in order to show the later footage of the shooting. The court concluded that "[t]he footage of the defendant entering the store twenty minutes before the crime is not necessary to place the video of the shooting in context." <u>Id.</u> The court explained that the completeness rule did not require exclusion because there was no evidence of bad faith on the part of the Government in destroying the earlier footage. <u>Id.</u> at 160. Judge Pollak did not abuse her discretion in determining that the earlier footage was not needed to put the later footage into context, and, without such a showing of bad faith, the completeness rule does not require exclusion under <u>Sherman</u>.

Moreover, considered as a question of whether Judge Pollak's decision violated Codrington's Confrontation Clause or Due Process rights, the question is subject only to "plain error" review. Codrington argued her motion to suppress before Judge Pollak solely under the best evidence rule and the completeness rule (evidentiary rules), and now argues them solely as Confrontation Clause and Due Process claims (constitutional rules). Although the issues are related, her constitutional arguments were not raised below and they should only disturb Codrington's conviction if she can show that Judge Pollak committed plain error. To do so, Codrington "must show (1) error, (2) that is plain at the time of appellate review, and (3) that affects substantial rights." United States v. Carr, 557 F.3d 93, 109 (2d Cir. 2009) (internal quotation marks omitted). Even then, the court retains discretion "to notice a forfeited error if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

Judge Pollak's decision was not plain error. Neither party points to a case clearly holding that the use of a portion of a video, where other possibly exculpatory portions were negligently destroyed, amounts to a Due Process or Confrontation Clause violation. To the contrary, absent a showing of deliberate or bad faith conduct, it appears that the law goes the other way. More importantly, the error did not affect Codrington's substantial rights. Even if the video had been excluded, there was still the testimony of Sosa (which Judge Pollak credited) that he saw Codrington in the perfume aisle holding perfume. Coupled with the fact that she was stopped with the perfume upon leaving the store, that Judge Pollak did not believe her claim that she bought the perfume previously, and the other supporting evidence, there was a sufficient basis to convict absent the video footage. In light of this evvidence, any error was harmless.

## III. CONCLUSION

The court notes that this appeal has been handled by student attorneys working under the

6

supervision of experienced prosecutors and defense counsel. The court wishes to commend the student attorneys for their hard work and able argument on this matter. For the foregoing reasons, the judgment of conviction is AFFIRMED.

SO ORDERED.

Dated: Brooklyn, New York
June 18, 2009

s/ NGG
NICHOLAS G. GARAUFIS
United States District Judge